***EFILED***
Case Number 2022LA000472
Date: 4/11/2022 1:40 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**EXHIBIT A**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MARY E. ROMIG, | IN RE: ASBESTOS LITIGATION |
| Plaintiff, | |
| vs. | |
| HONEYWELL INTERNATIONAL, INC., Individually and as successor to AlliedSignal, Inc. and The Bendix Corporation; | Cause No. 22   **2022LA000472** |
| METROPOLITAN LIFE INSURANCE COMPANY; | |
| MORSE TEC LLC, f/k/a BorgWarner Morse TEC LLC, and successor-by-merger to Borg-Warner Corporation; | |
| MW CUSTOM PAPERS, LLC, as successor-in-interest to The Mead Corporation; | |
| Defendants. | |

## COMPLAINT

## COUNT I
## NEGLIGENCE

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1.     Plaintiff Mary E. Romig is a resident of the State of Ohio.

2.     Plaintiff alleges that Defendants have, at all times material to these causes of action, through and including the present, maintained sufficient contact with the State of Illinois and/or transacted sufficient revenue-producing business in the State of Illinois to subject them to the jurisdiction of this Court pursuant to Illinois long-arm statute 735 ILCS 5/2-209.

3.  Defendants are corporations that are amenable to jurisdiction in the Courts of Illinois for numerous reasons, including but not limited to:

(a)  Defendants are either Illinois corporations or foreign corporations that now conduct or have conducted business or business ventures within Illinois, or have had offices or agencies within Illinois, which subjects them to jurisdiction within Illinois;

(b)  alleged causes of action arising out of or relating to the business or business ventures conducted by Defendants within Illinois or through which Defendants purposefully availed themselves of Illinois law, invoked the benefits and protections of Illinois law, or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction of the Illinois courts;

(c)  Defendants' asbestos or asbestos-containing products were sold in Illinois, Defendants were aware that their products would be sold in Illinois, and Defendants directly or indirectly availed themselves of the Illinois market as a market for their products;

(d)  each foreign corporation Defendant engaged in a course of conduct that was nationwide, including within Illinois, in its distribution and sale of asbestos or asbestos-containing products and in its failure to provide adequate warnings;

(e)  each foreign corporation Defendant specifically targeted Illinois, directly or indirectly, as a market for its asbestos or asbestos-containing products;

(f)  each foreign corporation Defendant, through agents, employees, brokers, jobbers, wholesalers, or distributors, has sold, consigned, or leased tangible or intangible personal property to persons in Illinois;

(g)  each foreign corporation Defendant designed, developed, tested, manufactured, assembled, distributed, labeled, packaged, supplied, and/or created a marketing strategy for its asbestos or asbestos products in Illinois;

(h)  each foreign corporation has committed wrongful acts either outside or inside Illinois, causing injury to Plaintiff;

(i)  each foreign corporation derives substantial revenue from interstate or international commerce and should reasonably have expected its

acts to have consequences in Illinois or in any other state that would subject it to liability in those states;

(j)    each foreign corporation Defendant has conducted substantial, and not merely isolated, activity within Illinois;

(k)    each foreign corporation Defendant purchased asbestos-containing components that were manufactured in Illinois and/or from Illinois suppliers and/or incorporated asbestos-containing components into its asbestos products in Illinois;

(l)    each foreign corporation Defendant registered for the right to conduct intrastate business in Illinois, conducted intrastate business in Illinois pursuant to such registration, maintained a registered agent for service of process in Illinois, and/or was served with process in this case via its Illinois registered agent; and/or

(m)    The State of Illinois has an overwhelming interest in exercising jurisdiction over this case and the causes of action alleged in it for numerous reasons including, but not limited to:

    i.    Plaintiff was an Illinois resident when she was exposed to Defendants' products and premises;

    ii.    Plaintiff and/or the others who purchased the Asbestos Products at issue in this case to which Plaintiff was exposed purchased Defendants' toxic asbestos products in Illinois;

    iii.    Plaintiff was exposed to Defendants' asbestos products and premises in Illinois;

    iv.    Illinois has a strong interest in protecting its citizens or consumers within the State from exposure to dangerous products and premises; and

    v.    Illinois has a strong interest in providing its citizens or consumers within the State with an effective and efficient forum for resolution of disputes regarding injuries to them, particularly injuries caused by actions in the State and/or that manifest themselves in the State.

4.    The tortious activity alleged by Plaintiff below occurred in Cook County, and venue is therefore appropriate in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101.

5.      Plaintiff Mary E. Romig's mesothelioma and any other asbestos-related health conditions from which she suffers are indivisible injuries that resulted from the combined effects of her exposures to the asbestos products of all Defendants, including all of her exposures in the various states in which she may have been exposed to asbestos.

6.      From approximately 1946 to 1965, Plaintiff Mary E. Romig's father, Raymond Kessler (deceased), owned and operated a gas station located in Ohio, wherein he performed automotive maintenance and repair work, including but not limited to, the removal and replacement of brakes and clutches. During this time, Plaintiff Mary E. Romig lived in the family home with her father and rode in the family vehicle that her father drove to and from work.

7.      From approximately 1965 to 2016, Plaintiff Mary E. Romig was married to Charles Romig (deceased), and at all times resided with him in the marital home. During their marriage, Charles Romig worked for Borg-Warner located in Bellwood, Illinois (1966-1973), and later for Borg-Warner in Auburn Hills, Michigan (1973-1975). Mr. Romig started out on the assembly floor before moving to the sales team. Additionally, from approximately 1966 through 1973, Plaintiff Mary E. Romig worked for Borg-Warner located in Bellwood, Illinois, wherein she worked in assembly line, became a punch press operator, then an inspector and tester of friction plates, brake pads, and brake bands. Mary collected and tested debris drilled from the friction material.

8.      Upon information and belief, Plaintiff Mary E. Romig's father, Raymond Kessler (deceased), and husband, Charles Romig (deceased), worked with and around asbestos-containing products. Dust containing asbestos fibers created by their work, as well as the work of others in their vicinity, accumulated on their person and clothing, which they brought with them into the family homes and vehicles. The asbestos fibers become airborne in the family homes and vehicles when they entered them. As a result, the family homes became contaminated with asbestos fibers.

Plaintiff Mary E. Romig repeatedly inhaled, breathed or was otherwise exposed to the asbestos fibers that her father and husband brought into the family homes and vehicles on their person and clothing. As a result of inhalation, breathing, and other exposure to these fibers, Plaintiff Mary E. Romig developed mesothelioma.

9.      During the course of Plaintiff Mary E. Romig's family members' employment at the locations(s) and job(s) mentioned above, and/or in other ways, Plaintiff Mary E. Romig breathed in, inhaled, and was otherwise exposed to asbestos fibers emanating from certain products they were working with and around, including but not limited to products that were designed, manufactured, sold, delivered, distributed, processed, applied, specified, and/or installed by Defendants: HONEYWELL INTERNATIONAL, INC., Individually and as successor to AlliedSignal, Inc. and The Bendix Corporation; and MW CUSTOM PAPERS, LLC, as successor-in-interest to The Mead Corporation.

10.     Plaintiff Mary E. Romig's exposure to the materials, products, equipment, activities, and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout her entire career or life as to any particular Defendant.

11.     At all times herein set forth, Defendants' products were being employed in the manner and for the purposes for which they were intended.

12.     Plaintiff Mary E. Romig's inhalation of and exposure to the asbestos fibers emanating from the above-mentioned products and equipment was completely foreseeable and could or should have been anticipated by Defendants.

13.     Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise being exposed to them. Moreover, Defendants knew or should have known asbestos

is a carcinogen.

14.     Plaintiff Mary E. Romig suffers from an asbestos-related cancer, including but not limited to, mesothelioma. Plaintiff first became aware that she suffers from said disease(s) on or about January 19, 2022, and subsequently thereto became aware that the same was wrongfully caused.

15.     At all times herein relevant, Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff Mary E. Romig and others working with and around the asbestos-containing products of Defendants.

16.     Defendants failed to exercise ordinary care and caution for the safety of Plaintiff Mary E. Romig in one or more of the following respects:

(a)     Defendants designed, manufactured, sold, distributed, delivered, processed, specified, applied, supplied, and/or installed equipment, vehicles, machinery, technologies, and systems that included asbestos-containing components and which required and/or specified the use of asbestos-containing replacement components;

(b)     Defendants included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons working with or around them, such as Plaintiff's father and husband would inhale, breathe in, or otherwise be exposed to great amounts of that asbestos, and that persons such as Plaintiff's father and husband would transport the asbestos fibers on their person and clothing into the family homes and vehicles, where it would become airborne again and where Plaintiff would inhale, breathe in, or otherwise be exposed to great amounts of that asbestos;

(c)     Defendants included asbestos in their products, when Defendants knew or should have known that the asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly deleterious effect upon the health of persons inhaling, breathing in, and/or otherwise being exposed to them;

(d)     Defendants included asbestos and/or asbestos-containing components in their products when adequate substitutes were available;

(e)     Defendants failed to provide any or adequate warnings to persons working with and around their products of the dangers of inhaling, breathing in, or otherwise being exposed to the asbestos fibers contained in them, and how to avoid transporting the asbestos fibers on their person, hair, and clothing into the family home and vehicles;

(f)     Defendants failed to provide any or adequate instructions concerning the safe methods for working with and around their products, including specific instructions on how to avoid inhaling, breathing in, or otherwise being exposed to the asbestos fibers contained in them, and how to avoid transporting the asbestos fibers on their person, hair, and clothing into the family home and vehicles; and

(g)     Defendants failed to conduct tests on the asbestos-containing products that Defendants designed, manufactured, sold, distributed, delivered, processed, specified, applied, supplied, and/or or installed in order to determine the hazards to which workers such as Plaintiff's father and husband might be exposed while working with the products.

17.     As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants mentioned above, Plaintiff Mary E. Romig inhaled, breathed in, or was otherwise exposed to asbestos fibers causing her to develop the asbestos cancer aforesaid, which has severely disabled, disfigured and injured her; Plaintiff Mary E. Romig has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of her asbestos-induced cancer and conditions; Plaintiff Mary E. Romig has experienced great physical pain and mental anguish as a result of the inhalation of and exposure to said asbestos fibers.

WHEREFORE, Plaintiff prays judgment be entered against Defendants for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

## COUNT II
## NEGLIGENCE - PREMISES TAKE HOME EXPOSURE

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against defendant, MORSE TEC LLC, f/k/a BorgWarner Morse TEC LLC, and successor-by-merger to Borg-Warner Corporation ("Employer/Premises Defendant"), alleges as follows:

1.      Plaintiff adopts and incorporates all previous paragraphs as though fully set forth herein, except to the extent inconsistent with any averments for alternative liability or relief.

2.      From approximately 1965 to 2016, Plaintiff Mary E. Romig was married to Charles Romig (deceased), and at all times resided with him in the marital home. During their marriage, Charles Romig worked for Borg-Warner located in Bellwood, Illinois (1966-1973), and also for Borg-Warner in Auburn Hills, Michigan (1973-1975).

3.      Employer/Premises Defendant owned, operated, and/or controlled the premises where Plaintiff Mary E. Romig's husband, Charles Romig, worked as an employee.

4.      Plaintiff Mary E. Romig suffers from an asbestos-related cancer, including but not limited to, mesothelioma. Plaintiff first became aware that she suffers from said disease(s) on or about January 19, 2022, and subsequently thereto became aware that the same was wrongfully caused.

5.      While employed by Employer/Premises Defendant, Plaintiff Mary E. Romig's husband, Charles Romig, was unaware and had no reasonable way to know or realize the risks of being exposed to asbestos at the premises. Employer/Premises Defendant should have anticipated that Plaintiff Mary E. Romig's husband, Charles Romig, did not know and would not discover or realize the risks of being exposed to asbestos.

6.      While present upon said premises, Plaintiff Mary E. Romig's husband, Charles

Romig, was exposed to asbestos fibers emanating from asbestos and asbestos-containing materials present and being used at said premises. Dust containing asbestos fibers created by his work and the work of others around him accumulated on his person and clothing. The asbestos fibers became airborne in the family home and vehicles when he entered them. As a result, the family home and vehicles became contaminated with asbestos fibers. Plaintiff Mary E. Romig inhaled, breathed or otherwise was exposed to asbestos fibers emanating from asbestos and asbestos-containing materials present and being used at said premises.

7.      Plaintiff Mary E. Romig's inhalation, breathing or other exposure to said asbestos fibers was foreseeable and could or should have been anticipated by Employer/Premises Defendant, including that Plaintiff Mary E. Romig would be exposed off the premises and outside the course of her husband's employment.

8.      Employer/Premises Defendant knew or should have known that the asbestos fibers emanating from these products posed an unreasonable risk of harm to Plaintiff Mary E. Romig, her husband, and others similarly situated.

9.      Employer/Premises Defendant had a duty to use ordinary care to see that the premises at which Plaintiff Mary E. Romig's husband, Charles Romig, worked and where he was foreseeably exposed to asbestos was reasonably safe. Employer/Premises Defendant had a duty to use ordinary care for the safety of Plaintiff Mary E. Romig, her husband, and others working with and/or around asbestos-containing products/materials and when conducting any operations or activities on said premises. Employer/Premises Defendant had a duty in reducing or eliminating unreasonable risks that arose from said operation and/or activities.

10.      Employer/Premises Defendant breached its duty to exercise ordinary care for the safety of Plaintiff Mary E. Romig and her husband, Charles Romig, and was negligent in one or

more of the following respects:

(a)    Specifying, selling, distributing, installing, maintaining and/or applying asbestos-containing products and materials, and/or engaging subcontractors to do so, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff's husband would work with or around them, and would thereby inhale, breathe and otherwise be exposed to that asbestos, and that Plaintiff's husband would carry the asbestos fibers on his person and clothing into the family home and vehicles where Plaintiff would inhale, breathe and be exposed to the asbestos fibers and of the adverse health effects of such exposure;

(b)    Specifying, selling, distributing, installing, maintaining, supplying, and/or applying asbestos-containing products and materials and/or engaging subcontractors to do so, when Employer/Premises Defendant knew or should have known that said asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly deleterious effect upon the health of persons inhaling, breathing in, or otherwise being exposed to them;

(c)    Specifying, selling, distributing, installing, maintaining, supplying, and/or applying asbestos-containing products and materials and/or engaging subcontractors to do so, when adequate substitutes were available;

(d)    Failing to provide, or to insure that others provided, any or adequate warnings to persons working with and around the products or materials of the dangers of inhaling, breathing or otherwise being exposed to asbestos fibers contained in them;

(e)    Failing to provide, or to insure that others provided, any or adequate instructions concerning the safe methods of working with and around the products and/or materials, including specific instructions on how to avoid inhaling, breathing in, or otherwise being exposed to asbestos, and how to avoid carrying the asbestos fibers on their person and clothing into the family homes and vehicles where Plaintiff would inhale, breathe and be exposed to the asbestos fibers and of the adverse health effects of such exposure;

(f)    Failing to conduct tests on the asbestos-containing products or materials sold, distributed, installed, maintained, supplied, and/or applied in order to determine the hazards to which workers such as Plaintiff's husband might be exposed while working with the products and materials;

(g)   Failing to take reasonable precautions in the hiring and/or supervision of subcontractors to ensure that adequate precautions were taken with regard to the use of asbestos-containing products or materials; and

(h)   Failing to use or specify the use of available asbestos-free products as substitutes for asbestos-containing products.

11.   As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Employer/Premises Defendant mentioned above, Plaintiff Mary E. Romig inhaled, breathed in, or was otherwise exposed to asbestos fibers causing her to develop the asbestos cancer aforesaid, which has severely disabled, disfigured and injured her; Plaintiff Mary E. Romig has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of her asbestos-induced cancer and conditions; Plaintiff Mary E. Romig has experienced great physical pain and mental anguish as a result of the inhalation of and exposure to said asbestos fibers.

WHEREFORE, Plaintiff prays judgment be entered against Employer/Premises Defendant for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

## COUNT III
## NEGLIGENCE – EMPLOYER/PREMISES DIRECT EXPOSURE

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against defendant, MORSE TEC LLC, f/k/a BorgWarner Morse TEC LLC, and successor-by-merger to Borg-Warner Corporation ("Employer/Premises Defendants"), allege as follows:

1.   Plaintiff adopts and incorporates all previous paragraphs as though fully set forth herein, except to the extent inconsistent with any averments for alternative liability or relief.

2.      From approximately 1966 through 1973, Plaintiff Mary E. Romig worked for Borg-Warner located in Bellwood, Illinois.

3.      Employer/Premises Defendant owned, operated, and/or controlled the premises where Plaintiff Mary E. Romig worked as an employee.

4.      The latency period for mesothelioma is in excess of any potentially applicable repose period for filing a worker's compensation or administrative occupational disease claim.

5.      Plaintiff Mary E. Romig suffers from an asbestos-related cancer, including but not limited to, mesothelioma. Plaintiff first became aware that she suffers from said disease(s) on or about January 19, 2022, and subsequently thereto became aware that the same was wrongfully caused.

6.      While employed by Employer/Premises Defendant, Plaintiff Mary E. Romig was unaware and had no reasonable way to know or realize the risks of being exposed to asbestos at the premises. Employer/Premises Defendant should have anticipated that Plaintiff Mary E. Romig did not know and would not discover or realize the risks of being exposed to asbestos.

7.      Plaintiff Mary E. Romig's inhalation, breathing or other exposures to said asbestos fibers was foreseeable and could or should have been anticipated by Employer/Premises Defendant, including that Plaintiff Mary E. Romig would be exposed off the premises and outside the course of her employment.

8.      Employer/Premises Defendant knew or should have known that the asbestos fibers emanating from these products posed an unreasonable risk of harm to Plaintiff Mary E. Romig and others similarly situated.

9.      Employer/Premises Defendant had a duty to use ordinary care to see that the premises at which Plaintiff Mary E. Romig worked and where she was foreseeably exposed to

asbestos was reasonably safe. Employer/Premises Defendant had a duty to use ordinary care for the safety of Plaintiff Mary E. Romig and others working with and/or around asbestos-containing products/materials and when conducting any operations or activities on said premises. Employer/Premises Defendant had a duty in reducing or eliminating unreasonable risks that arose from said operation and/or activities.

10. Employer/Premises Defendant breached its duty to exercise ordinary care for the safety of Plaintiff Mary E. Romig and was negligent in one or more of the following respects:

(a) Specifying, selling, distributing, installing, maintaining, supplying, and/or applying asbestos-containing products and materials and/or engaging subcontractors to do so, even though it was completely foreseeable and could or should have been anticipated that persons would work with or around them, such as Plaintiff and would thereby inhale, breathe in, and otherwise be exposed to that asbestos;

(b) Specifying, selling, distributing, installing, maintaining, supplying, and/or applying asbestos-containing products and materials and/or engaging subcontractors to do so, when Employer/Premises Defendant knew or should have known that said asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly deleterious effect upon the health of persons inhaling, breathing in, or otherwise being exposed to them;

(c) Specifying, selling, distributing, installing, maintaining, supplying, and/or applying asbestos-containing products and materials and/or engaging subcontractors to do so, when adequate substitutes were available;

(d) Failed to provide, or to insure that others provided any or adequate warnings to persons working with and around the products or materials of the dangers of inhaling, breathing or otherwise being exposed to asbestos fibers contained in them;

(e) Failing to provide or ensuring that others provided any or adequate instructions concerning the safe methods of working with and around the products and/or materials, including specific instructions on how to avoid inhaling, breathing in, or otherwise being exposed to asbestos;

(f)     Failing to conduct tests on the asbestos-containing products or materials sold, distributed, installed, maintained, supplied, and/or applied in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products and materials;

(g)     Failing to take reasonable precautions in the hiring and/or supervision of subcontractors to ensure that adequate precautions were taken with regard to the use of asbestos-containing products or materials;

(h)     Failing to use or specify the use of available asbestos-free products as substitutes for asbestos-containing products.

11.     As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Employer/Premises Defendant mentioned above, Plaintiff Mary E. Romig inhaled, breathed in, or was otherwise exposed to asbestos fibers causing her to develop the asbestos cancer aforesaid, which has severely disabled, disfigured and injured her; Plaintiff Mary E. Romig has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of her asbestos-induced cancer and conditions; Plaintiff Mary E. Romig has experienced great physical pain and mental anguish as a result of the inhalation of and exposure to said asbestos fibers.

WHEREFORE, Plaintiff prays judgment be entered against Employer/Premises Defendant for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

**COUNT IV**
**CONSPIRACY**

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1.      Plaintiff adopts and incorporates all paragraphs from all previous and subsequent Counts as though fully set forth in this Count, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

2.      Johns-Manville Corporation, Johns-Manville Sales Corporation, Raymark Industries, Inc. (formerly Raybestos-Manhattan, Inc.), and Owens Corning are corporations, and, during the time relevant to the allegations herein, they or their corporate predecessors were in the business of manufacturing and distributing asbestos and asbestos-containing products.

3.      HONEYWELL INTERNATIONAL, INC. ("Bendix") is a corporation, and during the times relevant to the allegations herein, was itself or through predecessors in the business of manufacturing and distributing asbestos and asbestos-containing products – particularly, asbestos-containing friction materials.

4.      METROPOLITAN LIFE INSURANCE COMPANY, is a corporation that became involved with the asbestos industry in the late 1920s by, among other activities, performing health studies on asbestos miners at its policyholder companies and conducting other studies related to asbestos and disease. Unnamed co-conspirators, the precise identity of all of whom are not known even at this late date, include: (a) other corporations and entities involved in the asbestos industry that participated in and advancing the asbestos industry's agenda; and (b) trade organizations and other associations that operated, at least partially, as front groups for the interests of the asbestos industry and which were utilized as instrumentalities to advance the asbestos industry's agenda. Some notable examples of the latter category of conspirators include, but are not limited to the

Gypsum Association, the Asbestos Information Association ("AIA"), the Industrial Health Foundation ("IHF") and the Friction Materials Standard Institute ("FMSI").

5.      Hereafter, "Conspirators" include the corporations, associations, and entities named in paragraphs 2 through 4 of this Count, with participants and participation varying over time, depending on the type of asbestos industry financial interests at issue. While the conspiracy spanned over decades and was primarily related to and coextensive with promoting the financial interests of the asbestos industry, specific activities of Conspirators distinguish the conspiracy from merely promoting the asbestos industry agenda. Particularly, Conspirators conspired and agreed among themselves to, among other things: (a) conduct scientific studies on the effects of asbestos exposure, but withhold the results of such studies from the public; (b) control the dissemination of information about the hazards of asbestos in scientific and other publications, managing and manipulating such information as if it were a public relations issues as opposed to an issue of public health; (c) assert what was not true, namely that it was safe for people to be exposed to asbestos and asbestos-containing products; (d) fail to provide information about the harmful effects of asbestos to exposed persons; (e) organize in trade associations and otherwise to oppose restrictions on the use of asbestos; and (f) lobby against restrictions, limitations, and bans on the use of asbestos.

6.      As early as the 1930s, two or more of the Conspirators knew that exposure to asbestos caused serious disease and death. Conspirators also knew during all relevant times that individuals being exposed to asbestos were unaware of the hazardous, toxic, and carcinogenic properties of asbestos.

7.      The knowledge of the Conspirators included the following: (a) two or more Conspirators had been in the asbestos business for years and had directed manufacturing

operations; (b) Conspirators had actual knowledge of asbestos disease and death among workers exposed to asbestos as early as the 1930s (Lawsuits were filed against Johns-Manville by employees claiming disability from lung diseases at least as early as 1929); (c) Conspirators knew that asbestos was inherently dangerous and knew that, pursuant to the decisional law of Illinois and other states, each was under a duty not to sell asbestos without providing adequate warning of its harmful qualities.

8.      Two or more Conspirators had employees who were exposed to asbestos dust, and each of them had a statutory, regulatory, and decisional law duty to provide their employees with a safe place to work, or at the least, to warn the employees of the hazards presented by the presence of asbestos dust.

9.      Conspirators knew that if they adequately warned their employees and other persons who were at risk of asbestos disease, the publication of such warning would: (a) cause workers to leave the asbestos industry; (b) reduce the sale and usage of asbestos; (c) cause those otherwise exposed to asbestos to press for the cessation of such exposures; and (d) otherwise adversely affect the interests of the asbestos industry.

10.      Before and during her exposure to asbestos, Mary E. Romig was unaware that exposure to asbestos caused mesothelioma cancer.

11.      One or more of the Conspirators performed the following overt acts in furtherance of the conspiracy:

(a)      sold asbestos products that were used at the locations where Plaintiff's father and husband worked, without warning of the hazards known to the seller;

(b)      refused to warn its own employees about the hazards of asbestos known to it;

(c)     edited and altered the reports and drafts of publications initially prepared by Metropolitan Life's Assistant Medical Director, Dr. Anthony Lanza, concerning the hazards of asbestos during the 1930s;

(d)     agreed in writing not to disclose the results of research on the effects of asbestos upon health unless the results suited Conspirators' interests;

(e)     obtained an agreement in the 1930s from the editors of ASBESTOS, the only trade magazine devoted exclusively to asbestos, that the magazine would never publish articles on the fact that exposure to asbestos caused disease, and sustained this agreement into the 1970s;

(f)     suppressed research concerning asbestos and cancer at the Saranac Laboratory in upstate New York beginning in 1936;

(g)     prevented the dissemination of a 1943 report of Dr. Leroy Gardner, Director of the Saranac Laboratory, which was critical of the concept that there was a safe level of asbestos exposure;

(h)     defeated, through their control of the Asbestos Textile Institute (ATI), further study of the health of workers, despite the fact that the Industrial Hygiene Foundation's head engineer, William Hemeon, determined the need for further study during his study of ten asbestos textile plants in the 1940s;

(i)     suppressed the dissemination of information obtained by William Hemeon's study of ten asbestos textile plants in the 1940s;

(j)     edited and altered the reports and drafts of publications regarding asbestos and health initially prepared during the late 1940s and early 1950s by Dr. Arthur Vorwald, the Director of the Saranac Laboratory who succeeded Dr. Gardner;

(k)     suppressed the results of the Fibrous Dust Studies conducted in 1966 by the Industrial Health Foundation, Inc., Johns-Manville, Raybestos Manhattan, Owens Corning, Pittsburgh Corning Corporation, and PPG Industries, which demonstrated and confirmed that exposure to asbestos caused lung cancer and mesothelioma;

(l)     acting under the name of National Insulation Manufacturers Association, published a pamphlet entitled, "Recommended Health Safety Practices for Handling and Applying Thermal Insulation Products Containing Asbestos," in which they purported to inform readers about the health hazards of airborne asbestos, but withheld, among other facts, that asbestos caused serious disease and death, including cancer, that there was no cure for asbestos disease, and that there was no known safe level of exposure to asbestos;

(m)    purchased asbestos that did not contain warnings from co-conspirators, to which the purchaser then exposed its own employees without warning of the hazards known to the seller and purchaser;

(n)    refused to provide warnings of the hazards of asbestos exposure known to Conspirators to its employees who had to use asbestos-containing materials in the manufacture of other products for Conspirators;

(o)    purchased asbestos that did not contain warnings, including the purchase of asbestos by Bendix from Johns-Manville, and then exposed its own employees without warning of the known hazards;

(p)    refused to provide warnings of the hazards of asbestos exposure known to Conspirators to its employees who had to use asbestos-containing materials in the manufacture of other products for Conspirators, including the refusal of Bendix to warn its employees who were exposed to asbestos in connection with the manufacture of friction products of the hazards of asbestos known to Bendix;

(q)    altered the report of the study performed by IHF researchers Daniel Braun and David Truan, including the deletion of all references to an association of asbestosis and lung cancer, before the altered version was published in 1958;

(r)    sold asbestos-containing brake linings, including Bendix brake linings, without warning of the dangers of asbestos, which exposed Plaintiff to asbestos;

(s)    opposed and lobbied against regulations and restrictions on the use of asbestos in products;

(t)    opposed and lobbied against banning the use of asbestos;

(u)     opposed and lobbied against initially regulating threshold exposure limits for asbestos in the workplace, and after regulations were in place, continued to oppose and lobby against lowering such thresholds;

(v)     supported legislation in various states to include asbestos-related diseases in occupational disease and workers compensation statutes with limitations period shorter than disease latency periods; and

(w)     in 1971, working with the AIA and its public relations firm, Hill & Knowlton, FMSI members formed the "Asbestos Study Committee" (the "Committee") for the primary purpose of engaging the newly formed federal agencies (EPA, OSHA) and the state of Illinois on relevant regulations. Conspirator/Defendant Bendix was represented on the Committee. One of the first concerns of the group was a proposed Illinois law that would ban asbestos in brakes in 1975. In a 2-hour "unofficial" meeting with some members of the Illinois Pollution Control Board on September 17, 1971, brake manufacturers were represented by officials from Johns-Manville and Raybestos-Manhattan, and Johns-Manville consultant Dr. George Wright. Following hearings in Illinois at which the brake manufacturers were well represented, members of FMSI were urged to send letters to the state opposing the asbestos ban, thus avoiding pleadings, citing cost and economics. In December of 1971, FMSI circulated a final draft of the Illinois legislation wherein the section banning asbestos in brakes was eliminated.

12.     Many of the acts in furtherance of the conspiracy took place in Illinois, including but not limited to: (a) marketing, distributing, shipping, selling, manufacturing, applying, installing, designing, supplying, and processing asbestos, asbestos-containing materials, and/or asbestos-containing products; (b) supporting efforts in the 1930s through the Illinois Manufacturers Association and others to add asbestos-related diseases to the list of statutorily defined "occupational diseases" which were subject to limitations periods shorter than the known disease latency periods; (c) controlling, manipulating, delaying, and ultimately preventing for decades the dissemination of scientific information about the dangers of asbestos within the State of Illinois; and (d) opposing the Illinois Pollution Control Board's proposed ban of asbestos in

automotive brakes in the early to mid-1970s.

13.     As a direct and proximate result of said conspiracy, Plaintiff Mary E. Romig remained unaware and uninformed of the hazards of asbestos, failed to take precautions, and was thereby exposed to, inhaled, and breathed in asbestos fibers, causing her to develop mesothelioma. As a direct and proximate result of said mesothelioma cancer, Plaintiff Mary E. Romig has suffered and will continue to suffer: disability, disfigurement, pain, suffering, mental anguish, and medical costs.

WHEREFORE, Plaintiff prays judgment be entered against Defendants for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

### COUNT V
### NEGLIGENT UNDERTAKING

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1.      Plaintiff adopts and incorporates all paragraphs from all previous and subsequent Counts as though fully set forth in this Count, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

2.      In the late 1920s and early 1930s, two or more Conspirators began to study asbestos workers and to conduct scientific research on the effects of exposure to asbestos. In undertaking such research and studies, Conspirators forestalled others, including governmental entities, from performing and conducting such research and studies. Conspirators had a responsibility to the greater good and public health in performing this research and these studies. It was not only foreseeable, but actually foreseen, that this undertaking would affect the availability of scientific

information about the hazards and dangers of asbestos. Therefore, Conspirators had a duty to persons such as Ms. Romig to conduct the research and studies without bias and to freely disseminate such information. This they did not do.

3.      As result of said negligent undertaking, Plaintiff Mary E. Romig remained unaware and uninformed of the hazards of asbestos, failed to take precautions, and was thereby exposed to, inhaled, and breathed in asbestos fibers, causing her to develop mesothelioma. As a direct and proximate result of said mesothelioma cancer, Plaintiff Mary E. Romig has suffered and will continue to suffer: disability, disfigurement, pain, suffering, mental anguish, and medical costs.

WHEREFORE, Plaintiff prays judgment be entered against Defendants for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

### COUNT VI
### NEGLIGENT SPOLIATION OF EVIDENCE

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1.      Plaintiff adopts and incorporates all paragraphs from all previous and subsequent Counts as though fully set forth in this Count, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

2.      Prior to the commencement of this case, Defendants listed in Count I, Paragraph 9 had documents containing information relevant to this case in their respective possession, custody, and control.

3.      Upon information and belief, the information contained in said documents included but was not limited to: the identification of asbestos-containing products to which Plaintiff Mary

E. Romig, her father, and husband were exposed; the locations where Defendants sold, distributed, delivered, processed, applied, supplied, and/or installed asbestos-containing products; the identity of the manufacturers and other entities in the distribution chain of said products; and, Defendants' knowledge, notice, and information regarding the hazards of asbestos and whether or not they were negligent.

4.      It was foreseeable to a reasonable person/entity in the respective positions of Defendants that said documents and information constituted evidence that was material to potential civil litigation, namely asbestos litigation. Defendants had a duty to maintain and preserve said documents and the information contained therein because they knew or should have known that said documents and information constituted material evidence in potential asbestos litigation.

5.      Plaintiff has sought but has been unable to obtain, full disclosure of relevant documents and information from Defendants, leading to the inference that Defendants destroyed and otherwise disposed of said documents and information.

6.      Defendants and each of them breached their duty to preserve material evidence by destroying and otherwise disposing of said documents and information, at a time when they and each of them knew or should have known that the same constituted material evidence in potential civil litigation.

7.      As a direct and proximate result of this destruction and disposal of material evidence, Plaintiff has been impaired in proving claims against all potentially liable parties, including but not limited to Defendants, and, as a further result thereof, has been compelled to dismiss and/or unfavorably compromise claims against other Defendants, and thereby has been prejudiced.

8.     As a result of this prejudice, Plaintiff has been caused to suffer damages in the form of an impaired ability to recover against Defendants and lost or reduced compensation from other potentially liable parties in this litigation.

WHEREFORE, Plaintiff prays this Court to enter judgment against Defendants and to award compensatory damages in an amount to be proved at trial, but which are believed to exceed FIFTY THOUSAND DOLLARS ($50,000.00), and for such other and further relief that this Court deems just and appropriate.

## COUNT VII
## WILLFUL AND WANTON MISCONDUCT - CONSOLIDATED

Plaintiff Mary E. Romig brings this action by and through her attorneys, Maune Raichle Hartley French & Mudd, LLC, and for her cause of action against Defendants, states as follows:

1.     Plaintiff adopts and incorporates all previous paragraphs as though fully set forth in this Count, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

2.     Defendants had a duty to refrain from willful and wanton acts or omissions which would harm Plaintiff.

3.     In addition to the conduct set forth in paragraph 16 of Count I, Defendants also engaged in said conduct intentionally or with a reckless disregard for the safety of Plaintiff.

4.     In addition to the conduct set forth in paragraph 10 of Count II, Employer/Premises Defendant also engaged in said conduct intentionally or with a reckless disregard for the safety of Plaintiff.

5.     In addition to the conduct set forth in paragraph 11 of Count III, Employer/Premises Defendants also engaged in said conduct intentionally or with a reckless disregard for the safety of Plaintiff.

6.     In addition to the conduct set forth in paragraph 2 of Count V, Conspirators also engaged in said conduct intentionally or with a reckless disregard for the safety of Plaintiff.

7.     In addition to the conduct set forth in paragraph 6 of Count VI, Defendants also engaged in said conduct intentionally or with a reckless disregard for the safety of Plaintiff.

WHEREFORE, Plaintiff prays that judgment be entered in her favor and against Defendants, and each of them, and that he be awarded in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), which will fairly and reasonably compensate for Plaintiff Mary E. Romig's injuries and losses, and for such other and further relief that this Court deems just and appropriate.

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

/s/ *Jaclyn J. Harres*
Jaclyn J. Harres, Esq., #6317032
Brian M. Ukman, Esq., #6319547
Steven D. Rineberg, Esq., #6279377
Atty. No. – 61194
1015 Locust St., Ste. 1200
St. Louis, MO 63101
Phone: (314) 241-2003
Fax:    (314) 241-4838
jharres@mrhfmlaw.com
bukman@mrhfmlaw.com
srineberg@mrhfmlaw.com
*Attorneys for Plaintiff*